633 So.2d 293 (1993)
STATE of Louisiana
v.
Victor L. GAINES.
No. 93 KA 0009.
Court of Appeal of Louisiana, First Circuit.
November 24, 1993.
Writ Denied March 11, 1994.
*295 Doug Moreau, Dist. Atty., Baton Rouge by Brent Stockstill, Asst. Public Defender, for State of La.appellee.
David Price, Office of Public Defender, Baton Rouge, for defendant-appellant.
Before CARTER, GONZALES and WHIPPLE, JJ.
CARTER, Judge.
Victor L. Gaines was charged by bill of information with armed robbery, a violation of LSA-R.S. 14:64, and first degree robbery, a violation of LSA-R.S. 14:64.1. He pled not guilty and filed a motion to quash for misjoinder or, alternatively, a motion to sever offenses, which were denied by the trial court. A jury found defendant guilty as charged. He then filed a motion for new trial and a motion for post verdict judgment of acquittal, which were denied. On count one, defendant was sentenced to serve a term of eighteen years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. On count two, defendant *296 was sentenced to serve a term of five years imprisonment at hard labor, three years without benefit of parole, probation, or suspension of sentence, concurrent with count one.[1] Defendant was credited for time served prior to sentencing. Defendant appealed, urging three assignments of error.

FACTS
On April 17, 1992, at about 9:45 p.m., defendant entered a Shell station on Greenwell Springs Road, asking for directions to a particular location. After talking to Adrian Piper, the store clerk, for about ten minutes, defendant raised his shirt, showed Piper a gun, told her not to panic, and told her he did not want to shoot her. In response to defendant's threats, Piper opened the register and gave defendant about eighty-five dollars in cash. Defendant then left the store and fled on foot.
Ralph Rupple, a regular customer of the station, was entering the store at the time of the incident and observed defendant leaving the store. When Rupple went inside, Piper was upset and crying. After Piper told him that she had just been robbed, Rupple drove around to see if he could find the robber. After finding someone at a nearby apartment complex who matched the description given to him by Piper, Rupple returned to the station. Law enforcement authorities were unable to immediately locate the suspect.
On April 19, 1992, at 2:00 a.m., defendant approached the Circle K Store located on Greenwell Springs Road. He used the telephone, went into the store, walked to the wine case, and got a bottle of Thunderbird wine. He then approached the counter with his hand underneath his shirt and threatened Theresa Cooper, the clerk on duty. He told Cooper, "Give me all your money so I don't have to hurt you." In response to defendant's threats, Cooper opened the register and gave defendant sixteen dollars in cash, including a two dollar bill with a recorded serial number. Cooper believed that defendant had a gun and would shoot her if she did not cooperate. Defendant then took the money and the bottle of wine and left the store on foot.
An off-duty employee who happened to be in the store at the time of the offense got into her car and tried to find the robber. When she saw a sheriff's unit, she gave the deputy a description of the robber. While talking to the deputy, she observed defendant driving a truck on a nearby street. The deputy pursued defendant, using his lights and siren, but defendant refused to stop. Defendant eventually ran his vehicle off of the roadway onto a curb, jumped out of the vehicle, and fled down a canal. A city police officer, who had joined in the chase, caught defendant in about three feet of water. Defendant was returned to the Circle K Store, where he was identified by the victim and the off-duty clerk. Money in the amount taken in the robbery was found on defendant's person after his arrest, and the serial number of one of the bills matched the number recorded at the store.
Because defendant matched the description of the person who had committed the earlier robbery of the Shell station, the investigating detective of that offense placed defendant's picture in a photographic display and showed it to Piper and Rupple. Both witnesses selected defendant's picture.
Defendant testified in his own defense, admitting that he had a previous conviction for armed robbery and two convictions for simple burglary. He further acknowledged that he spent most of his income on cocaine. He confessed that he robbed the Circle K Store, but denied doing anything which would have implied that he had a weapon. He also denied any involvement in the earlier robbery of the Shell station, and he claimed that he was with a friend at a motel on Greenwell Springs Road at the time of that offense.

*297 DENIAL OF MOTION TO SEVER

In the first assignment of error, defendant asserts that the court erred in denying his motion to quash for misjoinder and, alternatively, his motion to sever. He argues that joinder of the two counts prejudiced him because the jury used evidence from the April 19 offense (an offense which defendant admitted) to convict him of the first robbery (an offense which defendant denied). Defendant maintains that, if the two charges had been billed separately, evidence of one offense would have been inadmissible other crimes evidence (under State v. Prieur, 277 So.2d 126 (La.1973)) in the trial of the other offense. Thus, defendant concludes that prejudice resulted from the joinder.
LSA-C.Cr.P. art. 493 allows joinder of two or more offenses if the offenses are of the "same or similar character" and are triable by the same mode of trial. The two offenses at issue in this case, armed robbery and first degree robbery, are of a similar character (the offenses occurred two days apart within a mile of each other and involved robberies of convenience store clerks) and are triable by the same mode of trial (a jury composed of twelve jurors, ten of whom must concur to render a verdict). See LSA-C.Cr.P. art. 782. Thus, joinder of the two robbery counts in a single bill of information was proper. See State v. Horton, 458 So.2d 445, 446 (La.1984).
Proper joinder in the bill of information, however, does not complete the inquiry. A defendant properly charged with multiple counts in a single bill may request a severance of the offenses for trial. Under LSA-C.Cr.P. art. 495.1, the court may order separate trials, or grant other relief, whenever it appears that the defendant or the state is prejudiced by the joinder. State v. Horton, 458 So.2d at 446. In ruling on a motion for severance, the trial court should consider a variety of factors in determining whether or not prejudice may result from the joinder: whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and the evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition; and whether, considering the nature of the offenses, the charging of several crimes would make the jury hostile. State v. Christy, 593 So.2d 1322, 1325 (La.App. 1st Cir.1991). A severance need not be granted if the prejudice can effectively be avoided by other safeguards. State v. Celestine, 452 So.2d 676, 680 (La.1984). In many instances the trial judge can mitigate any prejudice resulting from joinder of offenses by providing clear instructions to the jury. The state can further curtail any prejudice with an orderly presentation of evidence. State v. Horton, 458 So.2d at 447.
A motion for severance is addressed to the sound discretion of the trial court, and its ruling should not be disturbed on appeal absent a showing of an abuse of discretion. State v. Christy, 593 So.2d at 1325. When a defendant alleges prejudicial joinder, he has a heavy burden of proof. For an appellate court to reverse the trial court's ruling, there must be a clear showing of prejudice. State v. Machon, 410 So.2d 1065, 1068 (La.1982).
The Louisiana Supreme Court has held that a severance is not mandated simply because the offense would not be admissible at separate trials, if the defendant is not prejudiced by the joinder. There is no prejudicial effect from the joinder of two or more offenses when the evidence of each offense is relatively simple and distinct, although such evidence might not have been admissible in separate trials of the offenses because, with a proper charge, the jury easily can keep the evidence of each offense separate in its deliberations. State v. Celestine, 452 So.2d at 680.
Reviewing the trial court's charge to the jury in the instant case, there can be no doubt that the jury was aware that defendant was charged with two separate offenses, each requiring a separate verdict. The jury was given two separate lists of responsive verdicts (one for each count) and two separate verdict forms (one for each count). Admittedly, the court did not specifically instruct the jury that the evidence of one count could not be used in determining defendant's guilt of the other count. Such an *298 instruction should be used when a defendant is charged with multiple counts to prevent any prejudice which might result from the joinder. See State v. Celestine, 452 So.2d at 681. Defendant did not object to the court's failure to include this instruction; and, under the circumstances of this case, he was not prejudiced by the absence of such an instruction. The facts of the two offenses were relatively simple. Although the state presented the evidence for count two (the robbery from April 19) first, the state otherwise presented its evidence in a logical and straightforward manner, keeping the evidence of the two offenses separate. For each count, the state presented the testimony of the store employee who was robbed, the testimony of a corroborating eyewitness, and the testimony of law enforcement officers who investigated the offense.
After a review of the proceedings, we conclude that the jury was sufficiently apprised of its function and responsibilities to protect defendant from being prejudiced by the joinder. See State v. Celestine, 452 So.2d at 680.
In support of his claim that he was prejudiced by the joinder, defendant asserts that evidence of the April 19 robbery (where defendant was caught immediately after the robbery) was used to convict him of the April 17 robbery (which he denied). At the hearing held on the motion, defendant did not mention this concern to the trial court. Considering that the victim and an eyewitness to the April 17 robbery selected defendant's photograph from the photographic display and had no doubt when they identified defendant in court, we find no support in the record for defendant's claim.
Accordingly, we find that defendant was not prejudiced by the joinder of the offenses for trial. The trial court did not abuse its discretion in denying defendant's motion to quash or, alternatively, to sever. Assignment of error number one is without merit.

DENIAL OF MOTION FOR NEW TRIAL
In the second assignment of error, defendant argues that the court erred in applying the wrong legal standard in ruling on defendant's motion for new trial. Defendant apparently maintains that the trial court would have granted a new trial on the ground that the verdicts were contrary to the law and the evidence had it applied the correct standard.
Under LSA-C.Cr.P. article 851, in ruling on a motion for new trial, the trial court can only consider the weight of the evidence. In ruling on a motion for new trial, the court makes a factual review of the evidence as a thirteenth juror. If the trial court grants a new trial based on the weight of the evidence, the new trial can proceed without being barred by double jeopardy. Tibbs v. Florida, 457 U.S. 31, 42 & 47, 102 S.Ct. 2211, 2218 & 2221, 72 L.Ed.2d 652 (1982); State v. Korman, 439 So.2d 1099, 1101 (La.App. 1st Cir.1983). Moreover, the granting of a new trial under LSA-C.Cr.P. article 851(1) is not subject to review by the appellate court. State v. Korman, 439 So.2d at 1100-1101.
However, if the trial court finds the evidence legally insufficient, it cannot do so under LSA-C.Cr.P. article 851, but must do so under article 821, which provides for a post verdict judgment of acquittal or modification of the verdict and judgment of conviction on a lesser included responsive offense. In reviewing a jury verdict under article 821, the trial court cannot act as a "thirteenth juror." A post verdict judgment of acquittal is appropriate only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. LSA-C.Cr.P. art. 821. See also Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). If the trial court finds the evidence legally insufficient under LSA-C.Cr.P. article 821, the remedy is an acquittal; and the judgment is reviewable by the appellate courts on application of the state. State v. Korman, 439 So.2d at 1100.
Prior to sentencing, defendant filed a motion for new trial, alleging as one of his grounds that the verdicts were contrary to the law and evidence. See LSA-C.Cr.P. art. 851(1). Defendant also filed a motion for post verdict judgment of acquittal. See LSA-C.Cr.P. art. 821. At the hearing on the motions, defense counsel submitted the motions *299 without argument. The court issued the following ruling:
As to the motion for new trial, the court is going to deny. Likewise, deny the motion for post verdict judgement of acquittal. The test under article 821 is whether or not ... the court in viewing the evidence in the most favorable light to the prosecution could find that the evidence does not support the finding of the jury, and the court believes that the evidence supports the finding that the jury made. Therefore, I will deny both said motions.
Defendant argues that the court's comments show that trial court applied the standard applicable to the motion for post verdict judgment of acquittal when ruling on the motion for new trial.
We note that in State v. Long, 590 So.2d 694, 702-03 (La.App. 3rd Cir.1991), the appellate court vacated some of the defendant's sentences and remanded for reconsideration of the motion for a new trial. The court found that the trial court erred in using the LSA-C.Cr.P. article 821 standard when ruling on defendant's motion for new trial as to those counts.
However, for the following reasons, we find it inappropriate to remand for a reconsideration of the motion for new trial. First, when the trial court issued its ruling, defendant did not object on the ground that the court applied the wrong standard. Thus, procedurally he is barred from advancing this argument on appeal. See LSA-C.Cr.P. art. 841. Moreover, the record does not support defendant's claim that the court applied the wrong standard. The court's comments were brief and do not indicate that the court applied the standards of LSA-C.Cr.P. article 821 in ruling on the motion for new trial.
Accordingly, assignment of error number two is meritless.

DENIAL OF MOTION FOR POST VERDICT JUDGMENT OF ACQUITTAL
In the third and final assignment of error, defendant asserts that the court erred in denying his motion for post verdict judgment of acquittal. Defendant argues that the state's evidence, which showed that he was the person who committed the armed robbery (in count one), was insufficient. Defendant also argues that the state's evidence of first degree robbery (in count two) was insufficient. He maintains that he did nothing which would have made the victim of that count believe that he was armed with a dangerous weapon.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. State v. Ford, 608 So.2d 1058, 1062 (La.App. 1st Cir.1992). See LSA-C.Cr.P. art. 821. Where the key issue is defendant's identity as a perpetrator, rather than whether or not the offense was committed, the state is required to negate any reasonable probability of misidentification. State v. Ford, 608 So.2d at 1062.
The only issue which defendant raises in connection with count one, is whether or not the state adequately proved his identification as the person who committed the offense. Defendant notes that no physical evidence connected him to the crime, and he appears to maintain that the identifications made by the two witnesses are unreliable. He claims that the Shell station clerk was hesitant when she selected defendant's photograph from the photographic display and that the other witness possibly selected defendant's photograph merely because he might have already known defendant from the witness' previous work at the sheriff's office. When defendant testified, he denied any involvement in the robbery of the Shell station and indicated that he did not think that he had ever gone into the station.
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Ford, 608 So.2d at 1062. The jury's verdicts indicate that it accepted the testimony of the state's witnesses and rejected defendant's denial. *300 This determination by the jury was rational and is supported by the record. The Shell station clerk talked to defendant for about ten minutes before the robbery occurred. After the offense, she gave law enforcement officials a detailed description of the robber's physical appearance and clothing. Although she indicated that she was "hesitant" to make a selection from the photographic display, further questioning revealed that she did not want to make a selection without being careful about her selection. Both she and the customer who arrived after the robbery selected defendant's photograph from the display and identified defendant in court. Although the customer admitted that he might have known defendant from previous employment as a deputy at the parish prison, he also said that he did not think he knew defendant.
After a careful review of the record, we believe that a rational trier of fact could have concluded that the state negated any reasonable probability of misidentification and established beyond a reasonable doubt that defendant was the person who committed the armed robbery.
The only issue defendant raises in connection with count two (first degree robbery of the Circle K Store) is whether or not the state adequately proved the dangerous weapon element. LSA-R.S. 14:64.1(A) provides that first degree robbery "is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon." As the Louisiana Supreme Court indicated in State v. Fortune, 608 So.2d 148 (La.1992) (per curiam), the first degree robbery statute has objective and subjective components. The state must prove that the offender induced a subjective belief in the victim that he was armed with a dangerous weapon and that the victim's belief was objectively reasonable under the circumstances. The statute thus excludes unreasonable panic reactions by the victim, but otherwise allows the victim's subjective beliefs to determine whether the offender has committed first degree robbery or the lesser offense of simple robbery in violation of LSA-R.S. 14:65. State v. Fortune, 608 So.2d at 149.
Direct testimony by the victim that he believed that the defendant was armed, or circumstantial inferences arising from the victim's immediate surrender of his personal possessions in response to the defendant's threats, may support a conviction for first degree robbery. State v. Fortune, 608 So.2d at 149. In this case, defendant approached the counter with his hand underneath his shirt and told the Circle K clerk, "Give me all your money so I don't have to hurt you." Neither the clerk nor the other store employee who was present at the time of the robbery saw a gun, but both women believed that defendant had a gun and that he would use the gun if they did not cooperate. In response to defendant's threat, the clerk promptly gave defendant the money from the register. At the trial, defendant admitted his involvement in the robbery, but he testified that he did not imply that he was armed and did not intend for the women to think that he was armed. He explained that, if the women really had thought he was armed, one of them would not have followed him after the robbery.
The verdict indicates that the jury accepted the testimony of the state's witnesses and rejected defendant's claim that he did not imply that he was armed with a weapon. Even before defendant entered the store, the women suspected that defendant might be planning to commit a robbery. The off-duty employee testified that, just prior to defendant entering the store, she had told the clerk on duty to lock the door. She was suspicious of defendant because it was 2:00 a.m., he had walked to the store, and the women did not recognize him as being a regular customer. Although she followed defendant after the robbery, it was obvious from her testimony that she made no attempt to confront defendant and that she merely was looking for the direction of his getaway in order to provide this information to the police. Thus, the evidence supports a finding that defendant induced a subjective belief in the victim that he was armed with a dangerous weapon and that the victim's belief *301 was objectively reasonable under the circumstances.
The verdict in this case indicates that, after considering the credibility of the witnesses and weighing the evidence, the jury accepted the testimony of the state's witnesses and rejected the testimony of defendant. The credibility of a witness's testimony is a matter of the weight of the evidence. A determination of the weight to be given evidence is a question of fact for the trier of fact and is not subject to appellate review. State v. Johnson, 525 So.2d 301, 303 (La.App. 1st Cir.1988).
After careful review of the record, we find that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that the state proved the essential elements of the crime beyond a reasonable doubt. Accordingly, the trial judge did not err in denying defendant's motion for post verdict judgment of acquittal, and this assignment of error is without merit.

CONCLUSION
For the above reasons, defendant's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] The sentence imposed on count two was illegal in that only three years of the sentence was imposed without benefit of parole, probation, or suspension of sentence. The entire sentence imposed on a conviction for first degree robbery should be without benefit of parole, probation, or suspension of sentence. See LSA-R.S. 14:64.1(B). This court will not correct the sentence as the error is in defendant's favor, and the state has not appealed the illegal sentence. See State v. Fraser, 484 So.2d 122 (La.1986).